# Illinois Official Reports

## Appellate Court

---

### *People v. Scott*, 2015 IL App (4th) 130222

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY SCOTT, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0222 |
| Filed | February 2, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the prosecution and sentencing of defendant for unlawful delivery of a controlled substance, the jury's finding that defendant was guilty on two counts and the sentence imposed were affirmed, where defendant forfeited his objection to the video of his interrogation by failing to make an objection at trial and in a posttrial motion and defendant failed to meet his burden of proving that plain error occurred with respect to the video, and with regard to defendant's sentence, the record showed that the trial judge was not applying a personal policy against defendants with criminal histories. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-704; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State of Illinois Defender's office, of Springfield, and Thomas A. Lilien and Christopher McCoy (argued), both of State Appellate Defender's Office, of Elgin, for appellant.

Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Luke McNeill (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Pope and Justice Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1    After a January 2013 trial, the jury found defendant, Gregory Scott, guilty on two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2010)). In March 2013, the trial court sentenced defendant to two concurrent 13-year terms in the Illinois Department of Corrections (DOC). Defendant appeals, asserting (1) he is entitled to a new trial because the jury heard improper, irrelevant, and unduly prejudicial evidence; or (2) his case should be remanded for resentencing because his sentence was based on improper sentencing factors. We affirm.

¶ 2                                    I. BACKGROUND
¶ 3    On July 30, 2012, defendant was arrested and charged by information with two counts of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2010)). Both counts alleged defendant knowingly and unlawfully delivered less than one gram of cocaine, a controlled substance, to a confidential source (later identified as Sergio Gloria).

¶ 4                                    A. The Trial
¶ 5    On January 7, 2013, defendant's jury trial commenced. Sergio Gloria, the confidential informant who purchased the cocaine, testified first for the State. Gloria testified he worked as a confidential source for the Bloomington police department. He explained he was a convicted felon who was addicted to crack cocaine, and he was paid by the police to purchase drugs from defendant, whom he knew as "G." Gloria testified he purchased cocaine from defendant on two separate occasions on July 30, 2012. He attested the first buy occurred at the house where

defendant lived on Oak Street, and the second buy occurred at the plasma center nearby. Gloria stated, prior to each buy, both he and his van were thoroughly searched by Bloomington police Detective Stephen Brown. Gloria explained Brown had provided him with marked bills to pay for the cocaine, and after each buy, he turned the bags he purchased over to Brown. Gloria testified defendant gave him his phone number at the time of the first buy and he called the number to set up the second buy while he and Brown were sitting in his van.

¶ 6    On cross-examination, defendant, who was proceeding *pro se*, asked Gloria why he had originally identified the man he purchased drugs from as a "young black male." Gloria responded, "You look young to me. You know why? Because my eyeglasses weren't on that particular day. I do wear glasses." Defendant then asked Gloria if the police's video surveillance showed him wearing glasses, to which Gloria responded, "Possibly."

¶ 7    Detective Brown testified next for the State. Prior to his testimony, the State indicated it planned to show the jury a videotape of an interview Brown conducted with defendant. Outside the presence of the jury, the trial court asked defendant:

> "THE COURT: *** [A]ssuming that [Brown] testifies on the date and time and location when the video was recorded of his interview with you, is there any objection on your part to the introduction by the State first of the actual [digital video disc (DVD)] and having that displayed to the jury?
>
> [DEFENDANT]: Yes.
>
> THE COURT: Okay. And what's the basis of your objection assuming that a foundation is laid[?]
>
> [DEFENDANT]: I wanted to go through the interview with him first before you show the DVD to build a foundation. The tape was edited."

The court responded it would allow the video to be played to the jury over defendant's objection if Brown laid a proper foundation.

¶ 8    Brown first testified he had conducted a search of Gloria's person and vehicle before and after each of the controlled buys. He then explained he had photocopied the money he provided to Gloria to purchase the drugs. The photocopied money was admitted into evidence. Brown corroborated Gloria's testimony about the phone call setting up the second buy. He stated Gloria called the number and asked if he could "stop back by." Brown said he heard a male voice on the other end, and Gloria received a location for the second buy.

¶ 9    Brown next testified to the authenticity of the interrogation video, and it was played to the jury. Each juror was provided with a transcript of the interview, which was not offered into evidence. The video of defendant's interview was 21 minutes and 29 seconds long. During the interview, defendant indicated he worked as a maintenance man at a day care in Chicago for approximately 10 years before coming to Bloomington to look for work. Defendant explained he was staying at the Salvation Army and had been unemployed for approximately two years. Brown asked defendant about the house he was staying at–the house from the first buy–and Brown responded he did not live there; he was just sitting on the porch and had only known the woman who lived in the house for about two weeks. Brown then asked defendant:

> "[BROWN]: *** [D]o you *** use drugs or anything like that?
>
> [DEFENDANT]: Smoke a little marijuana sometime.
>
> [BROWN]: That's it? You don't use cocaine or nothing like that?
>
> [DEFENDANT]: No."

Later in the video, Brown explained to defendant:

> "We document our money that we go out and buy drugs with. Right? I take photocopies of the money that I use. That way when people go out and buy drugs[,] like police informants[,] and they bring us the drugs[,] guess who has our money? The drug dealer that brought the drugs to our informant. That's what happened here today. I'm givin' you a chance here just to explain your situation if you wanna. Because I don't have to. I don't need a confession. You had my money in your pocket and I watched you sell drugs to my informant from 10 feet away. Alright? And it's not the first time that you've sold drugs to that guy. This is not somethin' that just happened today. It just so happened that there's no need for me to keep givin' you my money. So I wanted my money back today. That's what happened. This isn't the first time that you've sold drugs to that guy and it's not the first time you've sold drugs to other people in that neighborhood. So this is your chance. You wanna explain why you're involved in this kind of stuff around here?"

Defendant responded, "Truthfully I'm really not tryin' to be involved in it. Somebody just gave me to take it down there to 'em." He then stated, "I'm not tryin' to be no drug dealer. I'm just tryin' to eat." He explained he did not know the names of the men who brought the drugs, but they were young men from Normal, Illinois. The following exchange then occurred:

> "[BROWN]: You hear of anything about these shootings here in the last couple weeks? Kids shooting each other and stuff. Hear anything about that?
>
> [DEFENDANT]: That gang bangin' shit.
>
> [BROWN]: You seen any of them kids runnin' around with guns? Flashin' around?
>
> [DEFENDANT]: No. No."

Immediately thereafter, defendant explained he knew there were two groups who had been "shooting each other," and he stated they were the men who were bringing the drugs down from Normal. Brown ended the interview by asking defendant, "How many bags did you give that guy? Three?" to which defendant responded, "Yeah."

¶ 10 On cross-examination, defendant continuously asked Brown why the video had been edited to cut out approximately 17 hours worth of footage. Brown stated the interview lasted 16 *minutes* and 55 *seconds*, not 16 hours and 55 minutes. At one point, defendant asked, "What else went on in that room?" Brown replied the video contained the entire interview and had not been edited in any way. Defendant then stated, "No, no, no. You choked me. You choked me unconscious. You beat me in my kidneys. I have never took medication in my life. I'm on medication now. I have to take medication for the rest of my life." The State objected to the form of the question and the trial judge reminded defendant he was not to testify while questioning the witness.

¶ 11 Kevin Raisbeck, a detective with the Bloomington police department, testified he conducted surveillance of the controlled buys. Raisbeck explained he was taking a video from across the street during the first buy. In the surveillance video, Gloria is seen entering the house on Oak Street, exiting the house a few minutes later, and speaking with a man in a blue polo shirt who was sitting on the porch. Raisbeck stated he was not able to identify defendant as the man in the video until defendant was arrested later that day wearing the blue polo shirt. The video was then played for the jury and admitted into evidence.

¶ 12   Raisbeck next testified he was not able to conduct video surveillance of the second buy because it took place at an unexpected location. He explained he arrived at the new location just in time to see defendant approach Gloria's van and lean inside the van for a few seconds. Gloria then left the scene, and defendant was arrested by street-crimes officers. Raisbeck testified he searched defendant at the scene and recovered $150 and an HTC cell phone. Raisbeck then called the number Gloria had called to set up the second buy and the recovered cell phone started ringing. He also matched the serial numbers on the money from defendant's pocket to the serial numbers of the money Gloria had been given to purchase the drugs. A photocopy of the recovered bills was admitted into evidence.

¶ 13   The video of defendant's interrogation was played again during the State's closing argument on January 8, 2013. The jury began its deliberations that evening and asked the court two questions. The first question, received at 4:20 p.m., was "Can we see the video again with the 1st buy[?]" The trial court allowed the jury to rewatch the video. The second question, received at 6:20 p.m., was "Can we see a copy of Sergio Gloria's testimony[?]" The trial court denied this request, explained the jurors should use their notes and recollections, and sent the jury home for the evening. The jury reconvened the next morning at 9 a.m., and it found defendant guilty on both counts at 10:25 a.m.

¶ 14                              B. The Sentencing Hearing

¶ 15   On March 4, 2013, the trial court sentenced defendant to two concurrent 13-year terms in DOC. Prior to sentencing, the State presented several aggravating factors, including the need to deter others from committing the same crime and defendant's extensive criminal history, which spans 30 years and includes 6 prior felony convictions and 3 prison terms. See 730 ILCS 5/5-5-3.2(a)(3), (7) (West 2012). In addition, the State encouraged the court to consider the following factors under section 411 of the Illinois Controlled Substances Act: (1) defendant's offenses involved the delivery of cocaine, a Schedule I substance (720 ILCS 570/411(1) (West 2012)); and (2) defendant was a nonuser who delivered a controlled substance to a user (720 ILCS 570/411(3) (West 2012)). Defendant responded he should receive the minimum sentence because his last conviction was over 10 years prior to the current charges, and he vehemently maintained the State did not prove its case because there was "no real evidence" and every witness for the State had lied on the stand. Taking both parties' statements into consideration, the court sentenced defendant.

"THE COURT: Now with respect to what you're waiting for, let me first indicate I'm going to impose concurrent not consecutive sentences not just because the State didn't ask for it, but I'm not finding that any of those aggravating factors necessary or from my perspective that it would be necessary by the court to incur consecutive sentences. So what we have remaining then is sentences basically that would range from a minimum of six to a maximum of thirty because of the fact that you have two previous class two felonies in addition to the offenses that you now stand convicted of that require a Class X sentencing. So what I'm considering here in addition as far as factors in aggravation and mitigation, again not to educate you or to go ahead and patronize you in any way Mr. Scott, but let me indicate that the factors that the State was referring to by and large in essence were statutory factors which the court is required to consider.

- 5 -

So for example just like I am to consider whether or not there are any factors in mitigation and I'm looking here at the factors in mitigation besides having considered them, I don't see any that apply. And then with factors in aggravation, the court has considered that you did receive compensation for committing the offense, that you have a history of prior delinquency and criminal activity. And that is a permissible factor, in fact it's a required factor for the court to consider at the time of the imposition of a sentence. So that is the relevance of your previous criminal history.

We have the deterrent effect that also comes into play that being deterrence and a sentence that is necessary to deter others from committing similar type offenses.

*** I do note this is your seventh and eighth felony convictions and that you've been to the [DOC] on three previous occasions. With just those factors alone, Mr. Scott, you ought and should know that we are not looking at the minimum that is going to be imposed because the minimum is basically reserved for individuals who either haven't been to the [DOC] in the past, and you have, or for that matter that don't have as much of a previous criminal history as you do.

So what I'm going to impose would be a sentence of, um, thirteen years in [DOC] on counts one and two."

¶ 16    Defendant did not file a motion to reconsider sentence with the trial court.

¶ 17    This appeal followed.

¶ 18                              II. ANALYSIS

¶ 19                               A. Video

¶ 20    Defendant argues his convictions should be reversed and his case remanded for a new trial because the jury heard evidence that was improper, irrelevant, and unduly prejudicial. Defendant specifically argues the video of his interrogation should have been redacted because it contained statements indicating (1) he used marijuana; (2) he previously sold drugs; and (3) his purported drug suppliers were involved in gang-related shootings of children. The State argues defendant (1) waived this argument because he acquiesced to the showing of the video, and (2) forfeited this argument because he did not similarly object to the video at trial. To the extent the issue is not preserved, defendant argues the issue can be reviewed as plain error.

¶ 21    As we have explained, "[w]aiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098, 943 N.E.2d 1249, 1256 (2011). Such a distinction is important because if defendant has waived the issue, we need not review his claim for plain error. *Id.* (explaining plain-error analysis applies to cases involving procedural default, not affirmative acquiescence). We address each issue in turn.

¶ 22                               1. *Waiver*

¶ 23    The State first contends defendant has waived the issue of whether the video of his interview should have been redacted because, when asked for the basis of his objection, defendant stated he "wanted to go through the interview with [Brown] first before [the court] showed the DVD to build a foundation" because "[t]he tape was edited." According to the State, this phrasing indicates defendant acquiesced to the video being played to the jury. The State further contends defendant's claim the video was edited "necessitated" the video be

shown in its entirety. Defendant maintains he did not acquiesce to the introduction of the video because he objected to the introduction of the video multiple times. We agree with defendant.

¶ 24 Where a defendant acquiesces to the actions taken by the trial court, he waives his right to challenge those actions on appeal. *People v. Dunlap*, 2013 IL App (4th) 110892, ¶¶ 11-12, 992 N.E.2d 184. We have previously described waiver as a "tactical decision *not to object* to otherwise objectionable matters." (Emphasis added.) *Bowens*, 407 Ill. App. 3d at 1098, 943 N.E.2d at 1256. Whereas forfeiture occurs accidentally or negligently, waiver is an intentional decision to abandon a known legal argument. *United States v. Olano*, 507 U.S. 725, 733 (1993). For example, we have found waiver where a defendant expressly declined to make an objection. See, *e.g.*, *Dunlap*, 2013 IL App (4th) 110892, ¶¶ 10-11, 992 N.E.2d 184 (holding defendant waived an objection to a public-defender reimbursement where the court asked defendant whether there was anything he wanted to say about whether the reimbursement should be imposed and defendant said "no").

¶ 25 Based on the record before us, we do not believe defendant intentionally abandoned his right to challenge portions of the video on appeal. Before the video was played for the jury, the trial judge asked defendant if he had any objection to the introduction of the video, to which defendant answered, "Yes." The State essentially asks us to construe defendant's express objection as a nonobjection. While we agree the language defendant used in stating the rationale for his objection is somewhat acquiescent, we must construe waiver principles liberally in favor of the criminally accused. *People v. Phipps*, 238 Ill. 2d 54, 62, 933 N.E.2d 1186, 1191 (2010). After defendant explained the basis for his objection, the trial judge explicitly stated the video would be "admitted over objection" so long as Brown laid the proper foundation for its admittance. Because the trial court treated defendant's comments as an objection, we will do the same.

¶ 26 It is true "a party may not request to proceed in one manner and then later contend on appeal that the requested course of action was in error." *People v. Denson*, 2014 IL 116231, ¶ 17, 21 N.E.3d 398. However, the State's contention that defendant's claim necessitated the video be shown in its entirety is without merit. Defendant did not ask the trial court to play the entire video. On the contrary, he objected to its admission. Once the video was admitted over his objection, defendant was free to question Brown on cross-examination about portions he believed were edited. See *People v. Hanson*, 238 Ill. 2d 74, 100, 939 N.E.2d 238, 254 (2010) ("When a circuit court makes an adverse evidentiary decision, defense counsel cannot be forced to choose between waiving an issue for appeal and allowing damaging testimony to go unanswered on cross-examination.").

¶ 27 Defendant's objection and later questions toward Brown reveal he believed the State had removed portions of the interrogation from the video before it was played for the jury. Defendant asked Brown several variations of, "What else went on in that room?" He never once asked Brown about anything actually on the video shown to the jury. Defendant's actions and comments do not demonstrate an intentional relinquishment or abandonment of his right to now dispute portions of the video which he believes *should* have been removed.

¶ 28 2. *Forfeiture*

¶ 29 The State next argues defendant forfeited review of the video because he failed to make a similar objection both at trial and in a posttrial motion. Defendant maintains he preserved the

issue because he objected to the introduction of the video and objections need not be identical at the trial and appellate level to preserve the issue for review. We agree with the State.

¶ 30    "A specific objection at trial forfeits all grounds not specified." *People v. Lovejoy*, 235 Ill. 2d 97, 148, 919 N.E.2d 843, 871 (2009). Defendant rightfully contends an issue raised on appeal does not have to be identical to the objection raised at trial. *People v. Mohr*, 228 Ill. 2d 53, 65, 885 N.E.2d 1019, 1025 (2008) (finding the phrasing of a defendant's trial objection and posttrial argument "close enough" to preserve the issue). However, where "[t]he claim defendant raises on appeal is significantly different from the claim he raised below," the issue raised on appeal is forfeited. *Lovejoy*, 235 Ill. 2d at 148, 919 N.E.2d at 871. A claim the video was edited is significantly different than a claim the video should have been edited to remove certain portions of inadmissible evidence. Accordingly, defendant has forfeited the issue he now raises on appeal.

¶ 31                                   3. *Plain-Error Review*

¶ 32    Defendant urges us to consider his claim under the plain-error doctrine of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967). Under the plain-error doctrine, a reviewing court is allowed to consider unpreserved error when either "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005). As a matter of convention, reviewing courts typically undertake plain-error analysis by first determining whether error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1059 (2010). However, under the closely-balanced-evidence prong, defendant "must show *both* that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." (Emphasis added.) *Herron*, 215 Ill. 2d at 187, 830 N.E.2d at 479.

¶ 33    Thus, where the evidence against a defendant is overwhelming, a primary inquiry into whether error occurred is unnecessary. See, *e.g.*, *People v. White*, 2011 IL 109689, ¶ 134, 956 N.E.2d 379 (finding the plain-error analysis "evidence-dependent and result-oriented" and refusing to consider whether error occurred because defendant could not show prejudice); *People v. Sims*, 192 Ill. 2d 592, 628-29, 736 N.E.2d 1048, 1067-68 (2000) ("[a]ssuming, without deciding" there was error, the court found "no plain error" because there was "no reasonable probability that the jury would have acquitted the defendant" (internal quotation marks omitted)); *People v. Davis*, 233 Ill. 2d 244, 273-75, 909 N.E.2d 766, 782-83 (2009) ("assuming *arguendo*" there was error, defendant could not establish prejudice for purposes of plain-error review); *Bowens*, 407 Ill. App. 3d at 1108, 943 N.E.2d at 1264 ("When, as here, the record clearly shows that plain error did not occur, we will reject it without further analysis.").

¶ 34    Reviewing defendant's claim under the closely-balanced-evidence prong, we need not consider whether an error occurred because the evidence against defendant is overwhelming. Defendant asserts the evidence in his case is closely balanced because no officer actually saw an exchange between him and Gloria. He argues this, combined with the fact the bags of cocaine were not dusted for fingerprints, made Gloria's testimony "vital" to the State's case. Because Gloria was an unreliable witness with "many credibility problems," defendant contends admission of the entire video threatened to tip the scales of justice against him. We disagree.

¶ 35    Aside from Gloria's testimony, the State presented extensive evidence against defendant. Multiple officers identified defendant as the man they were surveilling during both buys, and Brown testified he searched Gloria's person and vehicle for money and contraband before and after each buy. Defendant was arrested only moments after Raisbeck testified he saw defendant lean into Gloria's van. The serial numbers of the money recovered from defendant's pocket matched the serial numbers of the money provided to Gloria for the second buy and the cell phone recovered from defendant's pocket started ringing when Raisbeck called the number Gloria had called to set up the second buy.

¶ 36    Even without the alleged improper segments, the video of defendant's interview depicts defendant confessing multiple times. When Brown told defendant he did not need a confession because he saw the transaction occur and asked defendant why he was involved with drugs, defendant responded, "Truthfully I'm really not trying to be involved in it. Somebody just gave me to take it down there to 'em." He then continued to cooperate with Brown by describing the process of how he received the drugs and stating he was "not tryin' to be no drug dealer," he was "just tryin' to eat." Later in the interview, Brown asked defendant if he gave Gloria three "bags," to which defendant responded, "Yeah."

¶ 37    Defendant asserts the fact the jury deliberated for two days and asked two questions demonstrates the closeness of the evidence. We disagree with defendant's implication that one afternoon and a little over one hour the next morning amounts to two full days of deliberation. In any event, "[c]areful consideration of the evidence adduced and exhibits admitted is what we expect of jurors in any trial." *People v. Wilmington*, 2013 IL 112938, ¶ 35, 983 N.E.2d 1015. We agree, in certain cases, a lengthy deliberation accompanied by a note from the jury demonstrates the closeness of the evidence. See *People v. Palmer*, 125 Ill. App. 3d 703, 712-13, 466 N.E.2d 640, 647-48 (1984) (noting the jury heard testimony from 21 witnesses over three days and sent a note to the court indicating they were deadlocked); see also *People v. Gonzalez*, 2011 IL App (2d) 100380, ¶ 26, 962 N.E.2d 23 (finding the evidence was closely balanced where witness credibility was "critical" because the only evidence presented was conflicting testimony between detectives and a witness for defendant). However, where the evidence against a defendant is overwhelming and there is no indication in the record that the jurors themselves considered the evidence closely balanced, a lengthy deliberation and notes from the jury are inconsequential. See *Wilmington*, 2013 IL 112938, ¶ 35, 983 N.E.2d 1015 ("[A]lthough the jury sent notes to the judge during the deliberative process, there is no indication in the record that the jury at any time had reached an impasse or that the jurors themselves considered this a close case."). The State presented a significant amount of testimony and physical evidence, while defendant presented nothing. Because defendant makes no argument under the second prong of the plain-error analysis, we find defendant has not met his burden of proving plain error and judicial review of his claim is not warranted.

¶ 38    We note this case comes to us on appeal as a direct result of defendant's actions following his decision to represent himself. We have continuously expressed our belief that proceeding without an attorney in a criminal matter is unwise. *People v. Palmer*, 382 Ill. App. 3d 1151, 1158, 889 N.E.2d 244, 250 (2008). This is because a defendant who chooses to waive his right to counsel will be held to the same standard as an attorney "even though the result may be that he is less effective as his own attorney." *People v. Tuczynski*, 62 Ill. App. 3d 644, 650, 378 N.E.2d 1200, 1205 (1978). Nonetheless, "a defendant retains the constitutional right to choose

to represent himself in a criminal trial no matter how unwise that decision may be." *Palmer*, 382 Ill. App. 3d at 1158, 889 N.E.2d at 250.

¶ 39                                    B. Sentencing Factors

¶ 40      Defendant concedes he did not preserve review of his sentence because he failed to file a motion to reconsider sentence (730 ILCS 5/5-4.5-50(c), (d) (West 2012)). However, defendant argues his case should be remanded for resentencing under a plain-error review because the trial judge based his sentence on improper sentencing factors. Specifically, defendant asserts (1) his sentence was based on the trial judge's own personal sentencing policy rather than an individualized sentencing determination; and (2) the trial judge considered compensation, an element inherent in the offense, as an aggravating factor.

¶ 41      "[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence [at the sentencing hearing] was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010) (citing *People v. Rathbone*, 345 Ill. App. 3d 305, 312, 802 N.E.2d 333, 339 (2003)). The plain-error rule is not a general saving clause for all trial errors. Rather, it is a limited and narrow exception "designed to redress serious injustices." *People v. Baker*, 341 Ill. App. 3d 1083, 1090, 794 N.E.2d 353, 359 (2003).

¶ 42      Keeping these rules in mind, we find review of defendant's sentence under the closely-balanced-evidence prong is not warranted. The evidence at the sentencing hearing included several aggravating factors and little in the way of mitigation. Defendant's only argument for why he should receive the minimum sentence was it had been over 10 years since his last conviction and the State had not actually proven its case because every witness lied on the stand. The State, on the other hand, presented multiple factors in support of an enhanced sentence, including, *inter alia*, defendant's extensive criminal history.

¶ 43      Under the second prong, defendant relies on *People v. Kopczick*, 312 Ill. App. 3d 843, 852, 728 N.E.2d 107, 115 (2000), to support his argument plain-error review is automatically warranted because "a trial judge's reliance upon an improper factor in sentencing impinges upon defendant's fundamental right to liberty." We flatly rejected this contention in *Rathbone* because "all sentencing errors arguably affect the defendant's fundamental right to liberty." *Rathbone*, 345 Ill. App. 3d at 311, 802 N.E.2d at 338. Determining whether a sentencing error is reviewable as plain error requires an in-depth analysis, and the second prong of the rule should only be invoked when the alleged error is "so serious that its consideration is necessary to preserve the integrity and reputation of the judicial process." (Internal quotation marks omitted.) *Id.* We will address the seriousness of the alleged sentencing errors in turn.

¶ 44             1. Defendant's Sentence Was Not Based on a Personal Sentencing Policy

¶ 45      Defendant first asserts resentencing is required as a result of the trial judge's statement that the minimum sentence is "basically reserved" for defendants who have not previously been to prison. Defendant argues, because there is no statutory requirement that the minimum sentence be given only to defendants without a prior DOC sentence, his sentence was necessarily based on the judge's own personal sentencing policy that defendants who have been to prison or have a criminal history will never receive a minimum sentence. We disagree.

¶ 46    Courts of review have reversed and remanded for resentencing where it has been shown trial judges have sentenced individuals based upon what is referred to as a "personal sentencing policy." In *People v. Bolyard*, 61 Ill. 2d 583, 587, 338 N.E.2d 168, 170 (1975), the supreme court explained a trial judge abuses his discretion when he arbitrarily denies an allowable sentence because the defendant falls within his category of "disfavored offenders." In *Bolyard*, the trial judge heard arguments on the question of whether defendant should be sentenced to a term of probation. Following the presentation of these arguments, the judge stated he personally subscribed to a policy that crimes involving sexual violence " 'were simply not probationable.' " *Id.* at 585, 338 N.E.2d at 169.

¶ 47    We refuse to invoke the plain-error doctrine on this issue because we find the trial judge's comments did not deprive defendant of a fair sentencing hearing. See *People v. Steppan*, 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307 (1985) ("The fact that the sentencing judge added some personal observations before imposing sentence, while not to be encouraged, is of no consequence.").

¶ 48    At the sentencing hearing, the trial judge stated:

> "I do note this is your seventh and eighth felony convictions and that you've been to [DOC] on three previous occasions. With just those factors alone, Mr. Scott, you ought and should know that we are not looking at the minimum that is going to be imposed *because the minimum is basically reserved for individuals who either haven't been to the Department of Corrections in the past, and you have, or for that matter that don't have as much of a previous criminal history as you do*." (Emphasis added.)

However, prior to sentencing, defendant stated to the court that he felt he should not receive a lengthy sentence, "[m]aybe six [years,] if that." Reading the complained-of comments in context, it is clear the trial judge was not adhering or subscribing to a rigid personal policy, but merely explaining to defendant the reasons he would not be receiving the minimum sentence in this case. The trial judge placed significant emphasis on the fact defendant was being convicted of his seventh and eight felonies and had been to prison three times. Based on "those factors alone," the judge explained defendant would not be receiving the minimum sentence. He went on to note the lack of mitigating factors and sentenced defendant to two concurrent 13-year terms in prison.

¶ 49    Unlike *Bolyard*, where the trial judge refused to consider a sentence of probation because defendant had committed a specific crime, here the trial judge was merely commenting on the effect of defendant's criminal history–a factor explicitly listed in the Unified Code of Corrections as a potential reason for extending a defendant's sentence. 730 ILCS 5/5-5-3.2(a)(3) (West 2012). We conclude the trial judge was not exercising an unyielding personal policy or vendetta against defendants who have criminal histories and have served time in prison.

¶ 50    *2. Consideration of Compensation Was Not Reversible Error*

¶ 51    Defendant next contends resentencing is required because the trial court considered the fact defendant received compensation for committing the offense as an aggravating factor. The State concedes consideration of compensation was improper, but it maintains the error was insignificant. We agree with the State.

¶ 52    It is well settled in Illinois that consideration of compensation as an aggravating factor when a defendant commits the offense of delivery of a controlled substance is improper because compensation is an element "inherent in the offense." *People v. Atwood*, 193 Ill. App. 3d 580, 592, 549 N.E.2d 1362, 1369 (1990) (citing *People v. Conover*, 84 Ill. 2d 400, 405, 419 N.E.2d 906, 909 (1981)). However, to warrant plain-error review, an error at sentencing must be "sufficiently grave that it deprived the defendant of a fair sentencing hearing." *Ahlers*, 402 Ill. App. 3d at 734, 931 N.E.2d at 1256.

¶ 53    Even if defendant's claim were to be reviewed on the merits, remand is not automatically warranted when a trial court has considered an improper sentencing factor. *People v. Bourke*, 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 (1983). In *Bourke*, our supreme court explained:

> "[R]eliance on an improper factor in aggravation does not always necessitate remandment for resentencing. Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. [Citations.] However, where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. [Citations.]" *Id.*

¶ 54    In *Bourke*, the trial judge noted in passing three statutory aggravating factors. Those factors were (1) the defendant received compensation for committing the offense; (2) the defendant had a history of prior delinquency and criminal activity; and (3) the sentence to be imposed was necessary to deter others from committing the same crime. On review, the supreme court noted it was improper for the court to have considered the factor of compensation, but it held "the record adequately demonstrate[d] that the weight placed on the improperly considered aggravating factor was so insignificant that it did not result in a greater sentence." *Id.* at 333, 449 N.E.2d at 1341. The court noted the State had not mentioned compensation in its closing argument, but rather, had stressed defendant's " 'flagrant violation of the terms of probation,' " which was the same factor emphasized by the trial court in sentencing the defendant. *Id.*

¶ 55    We find the circumstances of this case similar to the circumstances in *Bourke*. The State mentioned several aggravating factors in its closing argument, none of which were the fact defendant received compensation for committing the offense. Though the trial judge did not expressly state he was only considering compensation "in passing," the record, as a whole, reveals the weight placed on the fact defendant received compensation for committing the offense was insignificant. See *People v. Dowding*, 388 Ill. App. 3d 936, 943, 904 N.E.2d 1022, 1028 (2009) ("In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court."). This court came to this same conclusion in *People v. Schutz*, 201 Ill. App. 3d 154, 162, 559 N.E.2d 289, 295 (1990), where we found remandment unnecessary because the trial court had considered a number of aggravating factors in addition to compensation, which was only mentioned briefly.

¶ 56    In announcing defendant's sentence, the trial judge only mentioned compensation once and followed by directly commenting on the extreme nature of defendant's criminal history. He stated, "based on [defendant's criminal history] alone," defendant would not be receiving the minimum sentence. We conclude this sentencing error is not of the kind which warrants plain-error review. Defendant's sentence was 13 years–well below the maximum sentence and based significantly on defendant's extensive criminal history and prior delinquency. See *Bourke*, 96 Ill. 2d at 333, 449 N.E.2d at 1341 (the fact that defendant's sentence was

"substantially below the maximum" was determinative in finding defendant's sentence was not increased based on the court's consideration of improper factors). Accordingly, we affirm defendant's sentence.

¶ 57                                    III. CONCLUSION

¶ 58        For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002(a) (West 2012).

¶ 59        Affirmed.