NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210482-U

NO. 4-21-0482

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 23, 2022
Carla Bender
4ᵗʰ District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JASON SHOEMAKER, | ) | No. 20CF310 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding no plain error occurred because the trial court is presumed to have conducted the proper *Montgomery* balancing test regarding the admission of defendant's prior conviction for impeachment, if it considered it at all, and because the evidence was not closely balanced.

¶ 2    Following a bench trial, defendant, Jason Shoemaker, was found guilty of three counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2020)), and sentenced to three consecutive terms of 10 years in prison. Defendant appeals, arguing the trial court erroneously allowed the admission of his prior criminal conviction when it failed to conduct a balancing analysis pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1971). The State contends the trial court did not abuse its discretion when it allowed the admission of his prior conviction. We affirm the trial court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4           In November 2020, the State charged defendant by information with six counts of criminal sexual assault, Class 1 felonies (720 ILCS 5/11-1.20(a)(1), (a)(4) (West 2020)). Counts I, II, and III alleged defendant, who was 17 years of age or older and a household member of E.R., who was over the age of 13 but under 18, committed acts of sexual penetration with E.R. when he (1) placed his penis in the vagina of E.R. (count I), (2) placed his penis in the anus of E.R. (count II), and (3) placed his penis in the mouth of E.R. See *id.* § 11-1.20(a)(4). Counts IV-VI mirrored counts I-III but additionally alleged defendant committed the aforementioned offenses by the use of force. See *id.* § 11-1.20(a)(4).

¶ 5                                    A. Bench Trial

¶ 6           Defendant's case proceeded to a bench trial in March 2021. We summarize the relevant evidence as follows.

¶ 7                                    1. *E.R.*

¶ 8           E.R. testified she lived with three cousins (Jack, Michele, and Quentin), her two younger sisters (Em. R. and K.R.), her mother, and defendant. E.R. considered 43-year-old defendant as a family friend and pseudo "uncle."

¶ 9           When E.R. was 15, she lived in Streator, Illinois. Sometime in April 2020, she was alone in her cousin Quentin's room when defendant came in and locked the door. During this incident, defendant pushed E.R. backwards as she sat on the bed, took off her clothing and undergarments, and inserted his penis inside of her vagina.

¶ 10          Another incident, which was not part of the charged offenses in this case, occurred in August 2020 during a family trip to Florida. E.R. and her other family members went to defendant's hotel room to have ice cream. When the others had left, E.R. realized she had

dropped her phone and returned to the room to retrieve it. When she tried to walk out of defendant's hotel room, defendant grabbed her and pushed her onto the bed. While standing in front of her, defendant proceeded to pull down his shorts and force his penis into E.R.'s mouth by grabbing the back of her head. After defendant stopped but before he pulled up his shorts completely, E.R.'s friend and sister came into the room. When they asked what happened, E.R. stated she did not want to talk about it. E.R. testified defendant threatened to "beat" her if she told anybody.

¶ 11        After they returned from Florida, E.R.'s family moved into a new home. In September 2020, when E.R. was 16, E.R. was in her room watching television; everyone was gone except defendant. Defendant entered E.R.'s room, and as she sat on the bed, defendant pulled down her shorts and underwear, "threw [her] backwards, pinned [her] down to the bed," and forced his penis inside of her vagina and anus. Defendant also placed his mouth on E.R.'s vagina. Defendant held E.R.'s arms down on the bed, and when E.R. asked him to stop, he responded, "[J]ust let me do what I've got to do." After he stopped, defendant told E.R. not to tell anybody or he would beat her.

¶ 12        Following the incident in Florida, E.R. testified she was forced to perform oral sex on defendant "twice." Around October 2020, E.R.'s cousin, Jack, became aware of "what was going on" and made defendant move out of the home.

¶ 13        On cross-examination, E.R. agreed that she did not call out for help during the incident in Florida or during any of the other incidents at her home. She also agreed she had not been examined by a doctor and did not have any fear about going to Florida with defendant. She did not express to anyone that she did not want to go to Florida with defendant. E.R. did not reach out to a teacher, school resource officer, nurse, or school counselor regarding defendant.

¶ 14    On redirect examination, E.R. testified she did not tell anyone about the incidents with defendant because she was "very scared" of defendant, and she believed him when he threatened to "beat" her if she told anyone about it.

¶ 15                                        2. *Em. R.*

¶ 16    Em. R. testified she was 15 years old and E.R. was her older sister. Em. R. testified defendant had lived with her family on and off since she was about five.

¶ 17    Em. R. recalled that during a family trip to Florida in August 2020, she and her friend "walked in" on E.R. and defendant in defendant's hotel room. When they walked in, E.R. was lying on the bed facing towards the television, and defendant was standing against the bed facing E.R. Defendant's pants were partially pulled down around his legs. Defendant mentioned his "pants were too big" and walked away. Afterwards, defendant would not make eye contact with Em. R.

¶ 18                                        3. *Defendant*

¶ 19    After the State rested, defendant testified on his own behalf. Defendant testified he had lived with E.R. and Em. R.'s cousins, Jack and Michele, on and off for about 14 years. Defendant testified he was incarcerated in the La Salle County jail from December 2020 to January 2021 on unrelated charges.

¶ 20    Defendant denied forcing E.R. to perform oral sex on him during the family trip to Florida. Defendant explained there were many people coming and going from his hotel room at any given time and described the layout of the hotel room.

¶ 21    During rebuttal, the State moved to admit People's Exhibit 1, which was a certified copy of defendant's conviction for unlawful possession of cocaine, a Class 4 felony, in La Salle County case No. 19-CF-33. The exhibit was admitted without objection.

¶ 22                              4. *Arguments & Conviction*

¶ 23          The State argued E.R. provided clear testimony showing defendant used force as alleged in counts IV, V, and VI, in that he grabbed E.R.'s head, threatened to "beat" E.R. if she told anyone, and continued his sexual advances after being told by E.R. to stop. The State further argued Em. R.'s testimony corroborated E.R.'s allegations.

¶ 24          Defendant argued E.R. was not credible due to inconsistencies in her testimony regarding the dates the alleged offenses took place, noting defendant was incarcerated in La Salle County during the time frame E.R. testified he committed some of the alleged acts. Defendant further argued Em. R.'s testimony did not corroborate E.R.'s claims. Specifically, defendant argued given the layout of the hotel room in Florida, Em. R. would not have been able to see E.R. and defendant by the bed upon walking into the room. Finally, defendant argued the State presented no physical evidence and E.R. had not had a medical examination.

¶ 25          Following arguments, the trial court found defendant guilty of counts IV, V, and VI, which alleged defendant used force, but not guilty of counts I, II, and III. The court found E.R. to be a very credible witness, noting the allegations were traumatic and the fact E.R. may have "misstated" a date was "not significant enough to suggest that the allegations could not have happened in Livingston County based upon one year that she gave wrong in the totality of the evidence." The court found no evidence of a motive for E.R. to lie given that she did not come forward with the allegations, but rather "somebody found out somehow." The court further found defendant's argument regarding the layout of the hotel room unpersuasive, stating, "I don't think the Defendant's argument that because of the layout of the hotel room it was not possible to be viewed by [Em. R]." The court found Em. R.'s testimony corroborated E.R.'s and was also very credible. In contrast, the court found defendant's testimony not to be credible,

noting he avoided any mention of acts committed in Livingston County and only denied the incident that happened in Florida, which was not charged in this case. The court concluded, "[E]ven if the Defendant had not taken the stand in his own defense, I don't think that would change anything in regards to the testimony of [E.R.], which is very strong and compelling."

¶ 26                                    B. Posttrial Proceedings

¶ 27            Following a sentencing hearing, the trial court sentenced defendant to consecutive terms of 10 years in prison on counts IV, V, and VI, for an aggregate term of 30 years.

¶ 28            Defendant filed a motion to reconsider his sentence, arguing the court did not afford sufficient weight to the applicable mitigating factors. Following a hearing, the trial court denied the motion.

¶ 29            This appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31            On appeal, defendant argues the trial court abused its discretion when it allowed defendant to be impeached with his conviction for unlawful possession of cocaine in La Salle County case No. 19-CF-33 without first determining its admissibility pursuant to *Montgomery*. Defendant acknowledges he has forfeited any claim regarding the admission of his prior conviction by failing to object at trial and raise the issue in a postsentencing motion. Defendant nonetheless asks this court to review his claim under the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The State argues the admission of defendant's prior conviction was proper, or alternatively, the evidence was not closely balanced and therefore no plain error occurred. We agree with the State the evidence was not closely balanced and no plain error occurred.

¶ 32                                    A. Plain Error Review

¶ 33 Defendant argues the admission of his prior conviction constituted plain error. "The plain-error rule bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). This court will apply the plain error doctrine if a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). However, "[t]he plain-error rule is not a general saving clause for all trial errors. Rather, it is a limited and narrow exception 'designed to redress serious injustices.' " *People v. Scott*, 2015 IL App (4th) 130222, ¶ 41 (quoting *People v. Baker*, 341 Ill. App. 3d 1083, 1090 (2003)). Under plain error review, the burden of persuasion lies with defendant. *Thompson*, 238 Ill. 2d at 613.

¶ 34 B. Admission of Defendant's Prior Conviction

¶ 35 Defendant argues the alleged erroneous admission of his prior conviction is reviewable as first-prong plain error. We disagree.

¶ 36 The trial court is required under *Montgomery* to evaluate the probative value of the conviction to be used for impeachment and weigh it against its potential for prejudice. *People v. Mullins*, 242 Ill. 2d 1, 14 (2011). There is nothing in *Montgomery* or its progeny, however, requiring the trial court to specify and evaluate, on the record, the factors used if it actually applies the test. *People v. Melton*, 2013 IL App (1st) 060039, ¶ 17 (citing *People v. Washington*, 55 Ill. 2d 521, 523-24 (1973)). In fact, a trial court is presumed to understand the law and properly apply it. *People v. Brown*, 2013 IL App (3d) 110669, ¶ 50.

¶ 37    In this instance, the trial court made no mention of defendant's prior conviction introduced in rebuttal after defendant testified. We know from the record, however, the trial court was familiar with the balancing of probative value versus prejudice. As a result of a last-minute motion filed by the State pursuant to section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2018)), the trial court was asked to weigh the admissibility of similar uncharged acts against the victim, which the State sought to use for purposes of propensity evidence. While cautioning the State against filing such a motion within hours of defendant's bench trial, the court expressly weighed the statutory factors for the use of propensity evidence under the statute and concluded "the probative value would outweigh any prejudicial effect, especially since the Court is in a position to not be prejudiced in the, or in the fact-finding mission."

¶ 38    After admission of defendant's prior drug conviction in rebuttal, neither side mentioned it in argument, and the trial court likewise made no mention of it when rendering its decision. As our supreme court noted in *People v. Williams*, 173 Ill. 2d 48, 83 (1996), "there is no reason to suppose [the trial court] disregarded the familiar, well-established *Montgomery* standard in determining that the impeachment was proper." It is equally possible, from this record, to conclude the trial court saw no need to conduct the *Montgomery* balancing test at all since the court gave the prior conviction no consideration. Again, this was a bench trial and defendant was being tried for six counts of Class 1 criminal sexual assault. The court provided a detailed explanation of how it weighed the credibility of witnesses, including defendant, and ultimately found him not guilty of the three counts alleging his "position of authority" over the victim. Nowhere in the court's explanation of its ruling did it comment on the prior conviction or its effect on defendant's credibility. Instead, the court's assessment of defendant's credibility

appeared most affected by the fact that although defendant specifically denied the uncharged incidents occurring elsewhere, "he avoided Livingston County or anything with Livingston County."

¶ 39 It would have been better practice to address the issue of defendant's prior conviction before trial, or at least before he testified. See *People v. Patrick*, 233 Ill. 2d 62, 73 (2009) ("We agree with the comments of our appellate court and the courts of our sister states recognizing defendants' need for an early ruling and acknowledging that, in most cases, the trial judge will possess the information necessary to conduct a *Montgomery* hearing before trial."); *People v. Averett*, 237 Ill. 2d 1, 12 (2010) (stating the trial judges in the consolidated appeals abused their discretion by using a blanket policy to defer rulings on the motions *in limine*). It is equally true it would have been better practice to expressly mention the *Montgomery* balancing test or note for the record the court was not even considering the prior conviction—but it isn't required. *Melton*, 2013 IL App (1st) 060039, ¶ 17.

¶ 40 C. Balance of the Evidence

¶ 41 Even if we assume for argument the trial court failed to conduct a balancing inquiry as required by *Montgomery* when it allowed the admission of his conviction, the record shows the evidence was not closely balanced. Here, the court found E.R.'s testimony was "strong" and "compelling" and that she and Em. R. were both very credible. The court noted E.R. had no discernible motive to lie, and Em. R.'s testimony corroborated E.R.'s version of events. The court found defendant not to be credible—not because of any prior conviction—but because he completely avoided any discussion of events occurring in Livingston County, where the charged conduct in this case occurred. The court was further unpersuaded by defendant's argument the charged conduct could not have occurred on the date alleged by E.R. because he

was incarcerated in La Salle County, attributing any inconsistency in E.R.'s testimony to a simple misstatement by a traumatized young woman. The court was also unpersuaded by defendant's argument Em. R. could not have witnessed defendant standing in front of E.R. with his pants partially pulled down in his Florida hotel room because of the "layout" of the room, concluding nothing about the layout rendered either E.R.'s or Em. R.'s testimony unbelievable. Finally, the court concluded, "[E]ven if [defendant] had not taken the stand in his own defense, I don't think that would change anything in regards to the testimony of [E.R.], which is very strong and compelling." Given this record, we cannot conclude the evidence in this case was closely balanced.

¶ 42 Because the trial court is presumed to have properly applied the *Montgomery* balancing test, if it considered defendant's prior conviction at all, and because the evidence in this case was not closely balanced, we reject defendant's argument plain error occurred. Accordingly, we affirm the trial court's judgment.

¶ 43                                    III. CONCLUSION

¶ 44 For the reasons stated, consistent with Illinois Supreme Court Rule 23(b) (eff. Jan. 1, 2021), we affirm the trial court's judgment.

¶ 45 Affirmed.