# Illinois Official Reports

## Appellate Court

---

### *In re H.C.*, 2019 IL App (1st) 182581

---

| | |
|---|---|
| Appellate Court Caption | *In re* H.C., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. H.C., Respondent-Appellant). |
| District & No. | First District, Fourth Division<br>Docket No. 1-18-2581 |
| Filed | May 2, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-JD-01375; the Hon. Stuart F. Lubin, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Tomas G. Gonzalez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Veronica Calderon, and Lisanne Pugliese, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Presiding Justice McBride and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1    After a bench trial in juvenile court for criminal sexual abuse, H.C., the 17-year-old minor respondent, was found guilty. The trial court adjudicated him to be delinquent and a ward of the court and sentenced him to 18 months of probation.

¶ 2    In this appeal, respondent seeks a new sentencing hearing, claiming that the trial court improperly considered his maintenance of innocence as an aggravating factor when sentencing him and, therefore, denied respondent's request for supervision instead of probation. For the following reasons, we affirm.

BACKGROUND

¶ 3

¶ 4    On August 20, 2018, respondent was charged in a juvenile petition for adjudication of wardship with criminal sexual abuse, unlawful restraint, and battery. Prior to trial, the State made a plea offer of one year of probation in exchange for a plea of guilty to simple battery, and respondent rejected the offer. When the State published this offer on the record prior to trial, defense counsel stated on the record that she had advised respondent of the collateral consequences of having to register as a sex offender if convicted of criminal sexual abuse and of the possible immigration consequences that could result from a conviction. The social investigation report later indicated that respondent had immigrated to the United States from Honduras three years earlier.

¶ 5    In this appeal, respondent does not challenge either the sufficiency of the evidence against him or the admission at trial of any exhibit, testimony, or other evidence. Thus, we provide here a summary of what the State's evidence established at trial.

¶ 6    On August 19, 2018, at 8:47 p.m., the victim, whom we identify by her initials, N.A., was walking eastbound on Wrightwood Avenue on her way to the Logan Theater in the Logan Square neighborhood, when she observed respondent and two other young men walking toward her. Respondent was wearing a white shirt and a white hat. N.A. was married and lived in the area but did not testify as to her age. As she approached the men, they were positioned on the sidewalk, such that she either had to walk through them or walk in the street. The victim explained that she would have had to walk "out in the street because there is a tree on the right side here, and I would have had to walk around the tree, and here are the cars, so I would have to go around the cars or, yes, through the middle." So, she chose to walk through them.

¶ 7    As N.A. passed through the group, respondent grabbed her. She testified that he grabbed "between my legs." When asked to be more specific, she testified: "He grabbed my vagina." She testified that, after grabbing her vagina, he then "grabbed me like from the back." Again, when asked for more specificity, she testified: "[m]y butts." N.A. testified: "I started yelling first. I started screaming, and I just like fought my way out with my elbows. I just tried to—I don't know—fight my way out." The other men pushed N.A. toward respondent, making it difficult for her to escape. When asked whether respondent was laughing, she replied: "They were laughing." After escaping, she continued to walk to the theater, calling her husband on the way. N.A. explained: "No, I didn't run. I thought they will run after me if I run."

¶ 8    Once in the theater, N.A. observed the same group of three men walking past the theater and called 911. When the group had passed the theater, she went outside and told two men and a woman who were outside of the theater what had happened, and one of the two men, Nicholas

Marzullo, started to follow the group. After the police arrived, they located the group and brought all three men to the theater separately for show-up identifications. N.A. identified respondent as the one who had grabbed her, and Nicholas Marzullo also identified respondent.

¶ 9 When N.A. accompanied the police back to the scene of the offense, she observed surveillance cameras on nearby buildings. At trial, the State introduced two clips from a surveillance video. The clips depict clearly a group of three men, including one with a white hat and white shirt, walking spread across the sidewalk. However, the incident itself is too far away and blurry to observe exactly what occurred at the moment that the victim walked through the group of men. Also, there is a bright light in the film, from the headlights of an approaching vehicle, which partly obscures what happened at that moment. However, one can observe some sort of altercation and then observe the victim walking away and talking on the phone.

¶ 10 Detective Jose Duran interviewed respondent in Spanish at the police station with respondent's mother present. Detective Duran testified that he provided *Miranda* warnings in Spanish (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), that both respondent and his mother indicated that they understood the warnings, and that they waived the right to counsel and indicated that they would speak with Detective Duran. After receiving *Miranda* warnings, respondent admitted walking down Wrightwood Avenue and passing a woman who yelled "hey" to the group and kept on walking. At the station, respondent was still wearing a white hat and a white shirt. Detective Duran was not asked, and did not testify at trial, about whether respondent admitted or denied touching the victim.

¶ 11 The trial court found respondent guilty of criminal sexual abuse and battery but acquitted him of unlawful restraint and merged the battery conviction into the criminal sexual abuse conviction.

¶ 12 In the social investigation report, dated October 29, 2018, the probation officer reported: "The minor denies committing any act of crime." Further, the report stated:

> "The minor reported to the probation officer that the incident occurred around 8 p.m. when he was walking with two of his friends. As he was walking he and his friends saw a female who was walking on the same street the [*sic*] opposite of them. While as they passed each other up all he heard was a scream by the female that was walking past them. The minor denies anything else. He denies knowing why the female screamed until the police stopped him shortly thereafter. The minor completely denies any of his friends saying anything to her. He denies touching her."

¶ 13 The report noted that respondent has "a total of two court referrals with one of them being a finding of delinquency." The finding of delinquency was in the instant case. The probation officer recommended 18 months of probation.

¶ 14 At the sentencing hearing on November 8, 2018, the probation officer informed the trial court that he wanted to change his recommendation from 18 months of probation, as stated in his social investigation report, to 18 months of supervision. The trial court replied: "I'm not going to do that. This is a trial. Go ahead." The probation officer then described respondent's background, including that, at the time of the offense, respondent lived with his father, with whom he did not have a good relationship. Since his arrest, respondent had moved to a nearby town to live with his mother, with whom he had a good relationship, and he had an overall good school performance.

¶ 15    Although it was respondent's first offense, the State asked for a term of probation, based on the seriousness of the offense. In the victim's impact statement, the victim stated that the offense was the "most fearful moment in my life." She further stated: "I cannot walk alone anymore nowhere, I have nightmares."

¶ 16    Defense counsel observed that, prior to trial, the State had made an offer of probation for misdemeanor battery without a registration requirement, and counsel asked the court for a sentence of supervision. The following colloquy ensued at the sentencing hearing:

"DEFENSE COUNSEL: Your Honor, if you recall before this trial started, the State chose to put on the record the offer that they had made to the minor respondent, which was probation on a misdemeanor battery charge. Had he accepted that offer, there would be no collateral consequence of registration for that offense. The minor exercised his right to go to trial, and I don't—I'm not trying to minimize the seriousness of the offense, I am asking that the Court, however, consider a sentence of supervision.

THE COURT: I'm not doing that.

DEFENSE COUNSEL: Because—

THE COURT: Absolutely not. Not after what I heard at this trial."

¶ 17    At the sentencing hearing, defense counsel observed that, with probation, respondent would be required to be placed on the sex offender registry, which could cause him to be deported, and that his family intended to pursue asylum status based on respondent's having been recruited by gangs in Honduras.

¶ 18    Prior to sentencing respondent, the trial court offered respondent the opportunity to address the court, which he declined. The trial court then sentenced him, stating:

"THE COURT: You know, he is still denying what happened to his probation officer, and I heard a trial, and the evidence against him was frankly overwhelming, and what he did to [the victim] was inexcusable. There is no reason for it. No reason at all.

It's a finding of best interest and wardship, 18 months probation ***."

¶ 19    On December 5, 2018, respondent filed a notice of appeal, and this timely appeal followed.

¶ 20                                   ANALYSIS

¶ 21    On this appeal, respondent makes one claim, and it is a claim of sentencing error. He argues that the trial court improperly considered his maintenance of innocence as an aggravating factor and, thus, denied his request for supervision. For the following reasons, we affirm.

¶ 22                                I. Forfeiture

¶ 23    As an initial matter, respondent concedes that he forfeited this issue for our review by failing to object at sentencing. However, he asks this court to review his claim under the second prong of the plain error doctrine.

¶ 24    To preserve a claim of sentencing error for review, an adult offender must make both a contemporaneous objection and file a written postsentencing motion that raises the issue. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, a minor is not required to file a postsentencing motion. *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009). Thus, a minor only has to object contemporaneously in order to preserve a claimed error for appellate review. *In re*

*Samantha V.*, 234 Ill. 2d at 368. In the case at bar, respondent concedes that he failed to object and, thus, forfeited the issue.

¶ 25 However, we may still review the claimed error for plain error. To obtain relief in the sentencing context under the plain error doctrine, a defendant must, first, establish that a clear or obvious error occurred and "then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Hillier*, 237 Ill. 2d at 545; see also *People v. Scott*, 2015 IL App (4th) 130222, ¶ 41.

¶ 26 Under either prong, the defendant has the burden of persuasion. *Hillier*, 237 Ill. 2d at 545. "If the defendant fails to meet his burden, the procedural default will be honored." *Hillier*, 237 Ill. 2d at 545. In the case at bar, respondent argues for error only under the second prong: that he was denied a fair hearing. Thus, he attempts to satisfy his burden of persuasion only under that prong. *Hillier*, 237 Ill. 2d at 545 ("A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion.").

¶ 27 "The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49. For the following reasons, we cannot find that a clear or obvious error occurred.

¶ 28                                    II. Sentencing Hearing

¶ 29 "At the sentencing hearing" in a delinquency case, the trial court must first "determine whether it is in the best interests of the minor or the public that he or she be made a ward of the court." 705 ILCS 405/5-705(1) (West 2016). Only if the respondent is made a ward of the court does the trial court proceed to the second step, which is to "determine the proper disposition best serving the interests of the minor and the public." 705 ILCS 405/5-705(1) (West 2016). In the instant appeal, respondent does not challenge the first step of the sentencing hearing, namely, the trial court's finding that respondent should be made a ward of the court.

¶ 30 At the sentencing hearing, "[a]ll evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the trial." 705 ILCS 405/5-705(1) (West 2016).

¶ 31                                    III. Standard of Review

¶ 32 A trial court's selection of the best disposition or sentence in a juvenile case will be reversed only if the trial court abused its discretion " 'by selecting an inappropriate dispositional order.' " *In re Seth S.*, 396 Ill. App. 3d 260, 275 (2009) (quoting *In re J.W.*, 386 Ill. App. 3d 847, 856 (2008)); see also *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 11 ("abuse-of-discretion standard *** applies to a trial court's selection of a disposition"). An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or so unreasonable that no reasonable person would take the view adopted by the trial court. *In re Gennell C.*, 2012 IL App (4th) 110021, ¶ 11.

¶ 33 However, respondent argues that our standard of review should be *de novo*. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Gonzalez*, 2018 IL App (1st) 152242, ¶ 78.

¶ 34    In support of a *de novo* standard of review, respondent cites *People v. Winchester*, 2016 IL App (4th) 140781, ¶ 72, which found: "Whether a trial court considered an improper factor when sentencing a defendant is a question of law, which we review *de novo*." However, in the next line, the *Winchester* court stated: "There is a strong presumption the trial court based its sentencing judgment on proper legal reasoning." *Winchester*, 2016 IL App (4th) 140781, ¶ 72.

¶ 35    In *Winchester*, the appellate court concluded that, even where a prior conviction is used to enhance an offense, a trial court may still consider the nature and circumstances of the past conviction and may discuss issues such as an "inability to learn" and "the protection of society." *Winchester*, 2016 IL App (4th) 140781, ¶¶ 80-81. As a result, the *Winchester* court found no error, where "[t]he State presented defendant's criminal history to show defendant's lack of rehabilitative potential, the need for deterrence, and the concern it had over the public's safety." *Winchester*, 2016 IL App (4th) 140781, ¶ 82.

¶ 36    Whether we apply the abuse-of-discretion standard urged by the State or the standard articulated in *Winchester* as urged by respondent, the result here would be the same.

¶ 37                                    IV. *People v. Ward*

¶ 38    In support of his argument that the trial court relied on an inappropriate factor, namely, the maintenance of his innocence, respondent relies on *People v. Ward*, 113 Ill. 2d 516, 529 (1986).[1]

¶ 39    In *Ward*, as in the case at bar, the defendant had argued on appeal that "the sentence was imposed as a result of his protestation of innocence." *Ward*, 113 Ill. 2d at 522. In *Ward*, our supreme court observed that, "when it is evident from the judge's remarks that the punishment was, at least in part, imposed because the defendant had refused to plead guilty but had instead availed himself of his constitutional right to trial, the sentence will be set aside." *Ward*, 113 Ill. 2d at 526. "[A] court may not penalize a defendant for asserting his right to a trial ***." *Ward*, 113 Ill. 2d at 526.

¶ 40    However, before reversing on this ground, "it must be clearly evident that the sentence was improperly imposed." *Ward*, 113 Ill. 2d at 526. "In making the determination, the reviewing court should not focus on a few words or statements of the trial court. Rather, the determination of whether or not the sentence was improper must be made by considering the entire record as a whole." *Ward*, 113 Ill. 2d at 526-27.

¶ 41    In *Ward*, the defendant "urge[d] this court to declare that a lack of remorse is an improper factor to consider in imposing a sentence." *Ward*, 113 Ill. 2d at 527. However, our supreme court stated unequivocally: "We decline to place such a restriction on the trial judge." *Ward*, 113 Ill. 2d at 527. Instead, our supreme court found that "a lack of remorse" and a "failure to show a penitent spirit" may "properly be considered in determining sentences." *Ward*, 113 Ill. 2d at 529. "The defendant's continued protestation of innocence and his lack of remorse *** must not be *automatically* and *arbitrarily* applied as aggravating factors." (Emphases added.) *Ward*, 113 Ill. 2d at 529; see also *Scott*, 2015 IL App (4th) 130222, ¶ 53 ("remand is not automatically warranted when a trial court has considered an improper sentencing factor").

_____

[1]We observe that in *Ward*, the supreme court applied an abuse-of-discretion standard of review on this issue, thereby conflicting with the *de novo* standard of review that respondent had argued for in the prior section. *Ward*, 113 Ill. 2d at 531 ("Absent an abuse of this discretion, which we do not find evident from this record, the trial court's sentence should not be altered.").

"Rather," the trial court must evaluate "the attitude of the defendant *** in light of all the other information the court has." *Ward*, 113 Ill. 2d at 529.

¶ 42    In *Ward*, after the defendant asserted his innocence at sentencing, the trial court responded: " 'what you are saying now almost makes me want to sentence you to what the prosecutor is asking for, because you show no repentance when you stand before me; no contrition.' " *Ward*, 113 Ill. 2d at 524. After the trial court sentenced the *Ward* defendant, it stated: " 'I hope as you serve your sentence, that you will perhaps get some contrition and maybe smarten up.' " *Ward*, 113 Ill. 2d at 525. Reviewing these statements, our supreme court concluded: "There is no direct statement in this case which indicates that the judge was predisposed to impose a more severe sentence because of the defendant's failure to plead guilty ***." *Ward*, 113 Ill. 2d at 527.

¶ 43    Similarly, in the case at bar, the trial court's remarks at sentencing indicate that it considered respondent's lack of contrition rather than a failure to plead guilty. At sentencing, when explaining why it was rejecting supervision, the trial court stated: "Not after what I heard at trial." While the trial court would not have heard the evidence at trial if respondent had pleaded guilty, once respondent exercised his right to go to trial, the trial court was statutorily permitted to consider at sentencing all of the evidence that the court heard at trial. See 705 ILCS 405/5-705(1) (West 2016).

¶ 44    The trial court sentenced respondent, stating: "You know, he is still denying what happened to his probation officer, and I heard a trial, and the evidence against him was frankly overwhelming, and what he did to [the victim] was inexcusable. There is no reason for it. No reason at all." With words such as "inexcusable," the trial court was expressing its frustration with respondent's continued lack of contrition and acceptance of responsibility, in light of the "overwhelming" evidence heard by the court. In *Ward*, our supreme court found no abuse of discretion in the trial court's consideration of the defendant's lack of "repentance in light of the finding by the court that he was guilty." *Ward*, 113 Ill. 2d at 530-31. Following *Ward*, we also can find no error.

¶ 45    Without a clear and obvious error, there can be no plain error. *Sebby*, 2017 IL 119445, ¶ 49 ("The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial."). Even if we could find an error, the claimed error here would not rise to the level of plain error and would not be sufficient to invoke the second prong of the plain error rule. "[T]he second prong of the rule should only be invoked when the alleged error is 'so serious that its consideration is necessary to preserve the integrity and reputation of the judicial process.' " *Scott*, 2015 IL App (4th) 130222, ¶ 43 (quoting *People v. Rathbone*, 345 Ill. App. 3d 305, 311 (2003)). In *Scott*, for example, the appellate court found that the trial court considered an improper factor in sentencing but that the particular error was "insignificant" to the trial court's sentencing decision and, thus, did not rise to the level of second-prong plain error. *Scott*, 2015 IL App (4th) 130222, ¶¶ 51-53. The record before us shows that the weight—if any—that the trial court placed on the fact that respondent pled not guilty and chose to go to trial was insignificant, compared to the evidence that the trial court heard at trial, which it found to be "overwhelming" and "inexcusable." Thus, even if we could find a clear and obvious error—and we do not find it—the claimed error does not rise to the level of second-prong plain error on the facts of this case.

¶ 46    In sum, the trial court stated repeatedly that it was basing respondent's sentence on the evidence that it heard at trial, which it found to be both overwhelming and demonstrative of

inexcusable conduct. The State's pretrial offer was for only six months less of probation than what respondent received after trial. On these facts, we cannot find evidence of a "trial tax" or that the trial court penalized respondent for exercising his right to a trial.

¶ 47                                                                 CONCLUSION

¶ 48                    For the foregoing reasons, we affirm the trial court's adjudication and sentence.

¶ 49                    Affirmed.