NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220239-U

NO. 4-22-0239

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 22, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| LAELAND HOWARD, | ) | No. 20CF660 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Kevin W. Lyons, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court vacated defendant's sentence for unlawful possession of a weapon by a felon, remanded for resentencing for that offense, and otherwise affirmed the judgment of the trial court, holding:

(1) the trial court did not erroneously refuse to consider defendant's explanation for his actions as mitigating evidence at sentencing,

(2) the trial court did not abuse its discretion by imposing a 20-year extended-term sentence for aggravated discharge of a firearm,

(3) it is not clear or obvious from the record that the trial court incorrectly believed an extended-term sentence for aggravated discharge of a firearm was mandatory,

(4) the trial court erred in misapprehending the applicable sentencing range for unlawful possession of a weapon by a felon, and

(5) the cumulative effect of multiple alleged errors did not deprive defendant of a fair sentencing hearing.

¶ 2            Defendant, Laeland Howard, was found guilty of aggravated discharge of a firearm and unlawful possession of a weapon by a felon (UPWF). The trial court imposed concurrent sentences of 20 years' imprisonment and 10 years' imprisonment, respectively.

¶ 3            Defendant appeals, arguing this court should reduce his 20-year sentence for aggravated discharge of a firearm or remand the matter for resentencing because the trial court refused to consider mitigating evidence tending to excuse his conduct, abused its discretion in imposing an extended-term sentence based on his prior conviction for aggravated robbery, and incorrectly "treated an extended term sentence as mandatory." Defendant also argues the trial court misapprehended the sentencing range for the offense of UPWF. Finally, defendant argues the cumulative effect of these alleged errors deprived him of a fair sentencing hearing. We vacate defendant's sentence for UPWF, remand the matter for resentencing on that conviction, and otherwise affirm the judgment of the trial court.

¶ 4                                    I. BACKGROUND

¶ 5            Defendant was charged with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2020)). He was also charged with UPWF (*id.* § 24-1.1(a)) in that he knowingly possessed a firearm after having been previously convicted of aggravated robbery, a forcible felony, in Peoria County case No. 09-CF-675. Both charges arose from an incident that occurred on November 16, 2020.

¶ 6            At trial, Officer Morris Franklin testified that, on the day of the incident, he was eating his lunch in his vehicle while undercover when he observed defendant walk through a parking lot. Defendant entered the front passenger seat of a vehicle parked across the street from Franklin's vehicle, and Franklin saw that defendant was in possession of a gun. Franklin had "dealt with" defendant in the past, and he knew defendant did not have a valid firearm owner's

identification card. The vehicle defendant had entered drove away, and Franklin followed it from a distance, staying over a block away from the vehicle. He was unable to conduct a traffic stop because there were no lights or sirens in his undercover vehicle, so he requested that a marked patrol car come to the area. After Franklin had been following the vehicle for a few minutes, defendant exited the vehicle, fired two shots, and yelled something. He pointed the gun in Franklin's direction as he was shooting. Franklin got down on the floor of the vehicle and heard one more shot.

¶ 7            Franklin observed defendant reenter the front passenger seat of the vehicle, and the vehicle slowly drove away. Franklin followed the vehicle and observed defendant exit it. The vehicle then drove away at a high rate of speed. Franklin had not exited his vehicle or identified himself to defendant at that point. He then heard over the radio that other officers had detained a suspect matching defendant's description. Franklin proceeded to their location and identified defendant as the individual who had shot at him.

¶ 8            Another officer, Todd Leach, testified that he chased defendant on foot and apprehended him on the day of the incident. The officer saw defendant run past a tree, and a gun was later found underneath the tree. Officers recovered three shell casings from the scene of the incident, and forensic testing showed that they were fired from the gun officers recovered from under the tree.

¶ 9            Officer Michael Johnston testified he interviewed defendant at the police station on the day of the incident. A video recording of the interview was introduced into evidence. During the interview, defendant stated he was riding in a vehicle with a friend, and he observed a car following him. He fired a few shots in an attempt to get the car to stop following him. He was not trying to hurt the driver, and he did not know the driver was a police officer. Defendant

stated people were trying to kill him because his "name was put on a homicide," and he thought the person following him might be trying to harm him.

¶ 10    The parties stipulated that defendant was a convicted felon on the day of the incident.

¶ 11    Defendant testified that on the day of the incident, he was riding in a car with a friend when a car defendant believed looked suspicious began following them. Defendant's friend turned his vehicle twice, and the car continued to follow them. It was about one car length away. Defendant told his friend to pull over. Defendant exited the vehicle and fired three "warning shots" in an attempt to get the vehicle to stop following him. Defendant stated he fired toward the car that was following him, but he fired upward "in the air." He was not trying to hit the individual in the car; he just wanted the car to stop following him. He did not know the person driving the car was a police officer. The car continued to follow, so defendant exited his friend's vehicle and continued on foot. He was later apprehended. Defendant stated that, prior to the incident, he had been shot by an individual in a car that looked similar to the one that was following him. Defendant stated his life had been threatened because some people believed he committed a homicide in the past.

¶ 12    During closing argument, defense counsel argued defendant acted in self-defense on the day of the incident. Counsel argued Franklin was the aggressor and that defendant's actions were justified. Counsel asserted defendant shot into the air and did not attempt to hit the officer in the vehicle.

¶ 13    The jury found defendant guilty of both counts.

¶ 14    A presentence investigation report (PSI) was prepared in advance of the sentencing hearing. The PSI showed defendant had a prior felony conviction for aggravated

- 4 -

robbery, a Class 1 felony, which occurred in 2009 when defendant was 15 years old. Defendant was sentenced to 15 years' imprisonment for aggravated robbery and was released in 2016. After his release, defendant was convicted of the felony offense of violating an order of protection in 2019. Between 2018 and 2020, defendant was also convicted of the misdemeanor offenses of aggravated assault, unlawful possession of firearm ammunition, violating an order of protection, resisting a peace officer, and criminal trespass to land. He also had several prior adjudications of juvenile delinquency. Incident reports from the county jail and defendant's disciplinary records from high school were attached to the PSI.

¶ 15        At the outset of the sentencing hearing, the State indicated the sentencing range for aggravated discharge of a firearm was 4 to 30 years' imprisonment, and the sentencing range for UPWF was 7 to 14 years' imprisonment "because of the predicate offense." The trial court noted that the sentencing range for aggravated discharge of a firearm, a Class 1 felony, was 4 to 15 years' imprisonment. The court asked the State if defendant was "extendable." The State indicated defendant was eligible for an extended-term sentence because he had previously been convicted of aggravated robbery, a Class 1 felony, and was released from his prison sentence for that offense approximately four years prior to the offense in the instant case. The State argued defendant should be sentenced to 20 years' imprisonment for aggravated robbery.

¶ 16        Defense counsel argued the incident would not have happened if the police officer who followed defendant's vehicle on the day of the incident had revealed to defendant that he was a police officer. Counsel argued defendant believed the individual following him was a member of the community who was "up to no good" and was threatening him, so he discharged his firearm "to stop or intimidate the person in back to stop pursuing him." Counsel argued that this explained defendant's actions on the day of the incident. The trial court stated: "Maybe not

justified but explains it." Counsel replied, "Exactly." Counsel stated defendant would have acted differently if he had known the individual pursuing him was a police officer, and he asked the court to take that into consideration.

¶ 17　　　　Defendant made a statement in allocution in which he apologized to Officer Franklin and stated he took responsibility for his actions. He said he was not just "going around shooting at people," and he would not have fired any shots if he had known who Franklin was.

¶ 18　　　　In announcing its sentence, the trial court stated it had considered the PSI, the trial testimony, the jury's verdict, the evidence and arguments of the attorneys, and defendant's statement in allocution. The court stated it had "tried to give consideration" to the statutory factors in aggravation and mitigation, the history and character of defendant, and the nature and circumstances of the offense. The court stated defendant lived "in a different world than most of the world wants to live in." The court found defendant's history was "terrible," noting his juvenile offenses, school record, and receiving a sentence of 15 years' imprisonment for aggravated robbery when he was only 15 years old. The court stated:

> "[I]f I were to go light on you now, I could only assume—because I can only judge your future by your past—I can only assume that some citizen of Peoria or citizens would be in my wake. They would be your victim somewhere. And you just don't give me much to work with."

The court noted defendant had "lived in a world that require[d] [him] to live with a gun." The court stated it did not think defendant could "picture [him]self" living without a gun.

¶ 19　　　　The trial court stated that, while defendant did not know he was shooting at a police officer, he believed he needed to shoot at the individual to let him know he needed to "step it down" and that defendant "mean[t] business." The court found that defendant's decision

to shoot at the person following him was a "big deal" and that defendant could have been facing life imprisonment if a bullet had struck the individual. The court stated: "It's a shame, and I wish I could do it better for you. I wish I could turn you around and make you have a future that's going to be better than what I'm going to give you. But I can only say that you've done it to yourself." The court sentenced defendant to concurrent terms of 20 years' imprisonment for aggravated discharge of a firearm and 10 years' imprisonment for UPWF.

¶ 20        Defendant filed a motion to reconsider sentence, arguing defendant's explanation for the incident—that he was pursued by an unmarked squad car when people had threatened his life and he had previously been shot at by unknown assailants—justified a reduction of his 20-year sentence for aggravated discharge of a firearm. The trial court denied defendant's motion to reconsider sentence. After confirming there were no other matters pending, the court volunteered the following comments:

> "I'll take the position that if you had this to do over again, it would not have happened at all, as opposed to, well, screw everybody, I did what I did. I think that factored in to my sentence, which I realize is higher than people think some sentences should be because of the nature of the offense and the legislative minimum that is required to be given, but I'll reaffirm that sentence."

This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22        On appeal, defendant argues this court should reduce his 20-year sentence for aggravated discharge of a firearm or remand the matter for resentencing because the trial court refused to consider mitigating evidence tending to excuse his conduct, abused its discretion in imposing an extended-term sentence based on his prior conviction for aggravated robbery, and

incorrectly "treated an extended term sentence as mandatory." Defendant also argues the trial court misapprehended the sentencing range for UPWF. Finally, defendant argues the cumulative effect of these errors deprived him of a fair sentencing hearing.

¶ 23                          A. Failure to Consider Mitigating Evidence

¶ 24          With respect to his 20-year sentence for aggravated discharge of a firearm, defendant argues his claim of self-defense, though not accepted by the jury as a defense for his conduct, substantially excused or justified his conduct and was therefore a mitigating factor pursuant to section 5-5-3.1(a)(4) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.1(a)(4) (West 2020)). Defendant contends the trial court erred in refusing to find this mitigating factor applied. Defendant further argues the court's remark during the sentencing hearing that defendant had "done it to [himself]" showed the court was using defendant's self-defense argument as a factor in aggravation.

¶ 25          "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court must consider statutory factors in aggravation and mitigation and may not refuse to consider relevant evidence presented in mitigation. *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38; *People v. Markiewicz*, 246 Ill. App. 3d 31, 55 (1993). However, "the court need not recite and assign a value to each factor it has considered." *McGuire*, 2017 IL App (4th) 150695, ¶ 38. On review, we may not alter a defendant's sentence absent an abuse of discretion by the trial court. *Alexander*, 239 Ill. 2d at 212. "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *People v. Stacey,* 193 Ill. 2d 203, 210 (2000)).

¶ 26    Section 5-5-3.1(a)(4) of the Code (730 ILCS 5/5-5-3.1(a)(4) (West 2020)) provides that one of the statutory mitigating factors a court must consider in imposing a sentence is that "[t]here were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." Here, the trial court did not expressly indicate whether it found this statutory mitigating factor applied, but its comments indicate it did not. When defense counsel argued defendant's actions were explained by the fact that he believed the person in the car following him wished to harm him because his life had been threatened in the past, the trial court indicated this possibly explained rather than justified defendant's actions. Thus, it appears the trial court did not believe defendant's explanation for his actions rose to the level of "substantial grounds tending to excuse or justify" his conduct.

¶ 27    However, while the trial court may not have found that the above statutory mitigating factor applied, it is clear the court considered defendant's explanation for the offense when it sentenced him. When defense counsel suggested that defendant perceived he was being threatened by the person following in the car and that explained his actions, the court responded, "[m]aybe not justified[,] but explains it." While it is unclear how much weight the court gave defendant's explanation for his conduct, it appears it found the conduct to be mitigating, at least to some extent. We cannot say the court should have given it more weight or have found that it rose to the level of a substantial ground tending to justify defendant's conduct. See *People v. Streit*, 142 Ill. 2d 13, 19 (1991) ("A reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently.").

¶ 28    We reject defendant's argument that the trial court's comment that defendant had "done it to himself" showed it was considering defendant's self-defense claim as a factor in aggravation. According to our review of the record, the court was not specifically remarking on

defendant's self-defense claim when it made this comment. Rather, the court was expressing that it wished it did not have to impose a long prison sentence, but defendant had put himself in a bad position due to his commission of the present offenses and his criminal history.

¶ 29                                    B. Extended-Term Sentencing

¶ 30          Defendant argues the trial court abused its discretion in imposing a sentence for aggravated discharge of a firearm that was "well into the extended range" based on his prior conviction for aggravated robbery. Defendant notes he committed the aggravated robbery offense more than 10 years prior to the instant offense when he was only 15 years old. Defendant contends the trial court's comments showed that it used his 15-year sentence for aggravated robbery as a "baseline" and implied it believed that imposing a sentence shorter than 15 years' imprisonment would be "go[ing] light on" defendant.

¶ 31          Defendant also argues the trial court erroneously believed an extended-term sentence was mandatory. Specifically, defendant argues the trial court's comment following the hearing on his motion to reconsider sentence concerning "the legislative minimum that is required to be given" showed it believed the minimum sentence for aggravated discharge of a firearm was the extended-term minimum of 15 years' imprisonment rather than 4 years' imprisonment.

¶ 32          Defendant acknowledges he forfeited these arguments by failing to raise them at the sentencing hearing or in a postsentencing motion. However, he contends we may address them on appeal pursuant to the plain-error doctrine and because his trial counsel was ineffective for failing to preserve them. We first consider whether the plain-error doctrine applies.

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error
> when (1) a clear or obvious error occurs and the evidence is so closely balanced

that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step under either prong of the plain-error doctrine is determining whether a clear or obvious error occurred. *People v. Sebby*, 2017 IL 119445, ¶ 49.

¶ 33 Aggravated discharge of a firearm, as charged in this case, is a Class 1 felony. 720 ILCS 5/24-1.2(a)(2), (b) (West 2020). The sentencing range for a Class 1 felony other than second degree murder is 4 to 15 years' imprisonment, and the sentencing range for an extended-term Class 1 felony is 15 to 30 years' imprisonment. 730 ILCS 5/5-4.5-30(a) (West 2020). Section 5-5-3.2(b)(1) of the Code (730 ILCS 5/5-5-3.2(b)(1) (West 2020)) provides that the trial court may impose an extended-term sentence when a defendant is convicted of any felony after having been previously convicted of the same or greater class of felony when the conviction occurs within 10 years after the prior conviction, excluding time spent in custody.

¶ 34 Here, we find no clear or obvious error occurred when the trial court, exercising its discretion, imposed an extended-term sentence of 20 years' imprisonment for aggravated discharge of a firearm. Defendant was eligible for extended-term sentencing based on his aggravated robbery conviction, as it was a Class 1 felony and he had been released from prison only four years prior to the instant offenses. While defendant contends the aggravated robbery conviction was not indicative of his current character because it occurred over 10 years prior to the instant offenses and was committed when he was only 15 years old, the record shows he committed multiple criminal offenses after his release from prison. Accordingly, it is neither

clear nor obvious that the court abused its discretion in imposing a 20-year extended-term sentence.

¶ 35          We reject defendant's argument that the record shows the trial court used his prior sentence of 15 years' imprisonment for aggravated robbery as a baseline when sentencing him for aggravated discharge of a firearm. Defendant notes the trial court stated at the sentencing hearing that defendant had previously been sentenced to 15 years' imprisonment for aggravated robbery and that, judging by defendant's past, "some citizen of Peoria or citizens would be in [the court's] wake" if it were to "go light on" defendant. While defendant contends this shows the court used his prior sentence of 15 years' imprisonment as a "baseline," the court's comments merely showed it found defendant was likely to reoffend in light of his criminal history.

¶ 36          We also find defendant has not shown clear or obvious error occurred with respect to his claim that the trial court believed an extended-term sentence for aggravated discharge of a firearm was mandatory. At the outset of the sentencing hearing, the State advised the court that defendant faced a sentencing range of 4 to 30 years' imprisonment for aggravated discharge of a firearm, and there is no indication in the record that the court believed otherwise. While the court stated following the hearing on defendant's motion to reconsider sentence that the sentence was "higher than people think some sentences should be because of the nature of the offense and the legislative minimum that is required to be given," we cannot say this demonstrated the court's belief that it lacked discretion to impose a non-extended-term sentence. In fact, we cannot say what the court meant by its comment. The comment was not responsive to an argument by the parties or a pending matter. It lacked any context and is unclear on its face.

Therefore, we disagree with defendant that the comment reflects the court mistakenly believed it was required to impose an extended-term sentence.

¶ 37    Because defendant has failed to establish that a clear or obvious error occurred, relief is not warranted under the plain-error doctrine. See *In re H.C.*, 2019 IL App (1st) 182581, ¶ 45 ("Without a clear and obvious error, there can be no plain error.").

¶ 38    We further find defendant has not shown that his trial counsel was ineffective for failing to argue the trial court abused its discretion in imposing an extended-term sentence for aggravated discharge of a firearm or for "fail[ing] to correct the court's mistake" as to the sentencing range. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that his attorney's representation fell below an objective standard of reasonableness and a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *People v. Peterson*, 2017 IL 120331, ¶ 79. As we have found the trial court did not abuse its discretion in imposing an extended-term sentence for aggravated discharge of a firearm based on defendant's prior conviction for aggravated robbery, a reasonable probability does not exist the result of the proceeding would have been different if trial counsel had argued the imposition of the extended-term sentence was an abuse of discretion. Also, as we have found that it is neither clear nor obvious that the trial court believed an extended-term sentence was mandatory rather than discretionary, trial counsel's failure to challenge the court's belief as to the statutory minimum was not objectively unreasonable.

¶ 39    C. Use of the Incorrect Sentencing Range for UPWF

¶ 40    Defendant contends that the trial court misapprehended the applicable sentencing range when sentencing him for UPWF. Specifically, defendant argues the trial court incorrectly believed the sentencing range was 7 to 14 years' imprisonment rather than 3 to 14 years'

imprisonment. Defendant notes the State incorrectly asserted at the sentencing hearing that the sentencing range was 7 to 14 years' imprisonment, and defendant's counsel failed to correct this. Defendant acknowledges he failed to preserve this issue for review but asserts we may review it under the plain-error doctrine or, alternatively, on the basis that his trial counsel provided ineffective assistance in failing to correct the State's misstatement of the sentencing range. The State concedes the trial court misapprehended the sentencing range for UPWF and that this amounted to plain error and ineffective assistance of counsel.

¶ 41    A trial court's misunderstanding of the minimum sentence necessitates a new sentencing hearing where the court's mistaken belief arguably influenced the sentence. *People v. Eddington*, 77 Ill. 2d 41, 48 (1979). See also *People v. Owens*, 377 Ill. App. 3d 302, 305-06 (2007) (quoting *People v. Brooks,* 202 Ill. App. 3d 164, 172 (1990)) (" '[E]ven if a sentence imposed under a wrong sentencing range fits within a correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range in imposing the sentence.' "). Such an error is reviewable under the second prong of the plain-error doctrine, as "[a] defendant is entitled to be sentenced by a trial judge who knows the minimum and maximum sentences for the offense." *People v. Hausman*, 287 Ill. App. 3d 1069, 1071-72 (1997).

¶ 42    Here, defendant was charged with UPWF in that he knowingly possessed a firearm after having been previously convicted of aggravated robbery, a forcible felony. The UPWF statute provides, in relevant part:

> "Violation of this Section by a person not confined in a penal institution who has been convicted of a forcible felony *** is a Class 2 felony for which the person shall be sentenced to not less than 3 years and not more than 14 years, except as

- 14 -

provided for in Section 5-4.5-110 of the [Code]." 720 ILCS 5/24-1.1(e) (West 2020)).

Section 5-4.5-110(c)(1) of the Code (730 ILCS 5/5-4.5-110(c)(1) (West 2020)) provides that when an individual is convicted of UPWF, the weapon possessed is a firearm, and the individual was previously convicted of one of several enumerated qualifying predicate offenses, the individual shall be subject to a sentencing range of 7 to 14 years' imprisonment. Aggravated robbery is not a "[q]ualifying predicate offense," as defined in section 5-4.5-110 of the Code (*id.*). Accordingly, section 5-4.5-110 does not apply in this case, and the correct sentencing range for UPWF was 3 to 14 years' imprisonment.

¶ 43          After reviewing the record and relevant authority, we accept the State's concession that plain error occurred. During the sentencing hearing, the State incorrectly advised the court that defendant was subject to a sentencing range of 7 to 14 years' imprisonment, and this misstatement of the minimum sentence was not corrected by either the court or defense counsel.  Accordingly, it appears the court incorrectly believed at the time of sentencing that the statutory minimum was seven years' imprisonment, and it is arguable that this mistaken belief influenced its sentence.

¶ 44          We now consider the proper remedy for this error. The State contends we should reduce defendant's sentence for UPWF to six years' imprisonment pursuant to our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan. 1, 1967). The State asserts that remanding the matter would waste judicial resources since defendant's sentence for UPWF is being served concurrently with his 20-year sentence for aggravated discharge of a firearm. In his reply brief, defendant agrees this court has the power to reduce the sentence and suggests the sentence could be lowered to the statutory minimum of three years' imprisonment. As the parties are not in

agreement as to a specific sentence reduction, we find the best course of action is to remand the matter to the trial court for resentencing on the charge of UPWF. On remand, the court shall fashion an appropriate sentence within the correct sentencing range for the offense.

¶ 45                                            D. Cumulative Error

¶ 46            Finally, we reject defendant's argument that his sentences for both aggravated discharge of a firearm and UPWF should be vacated and the matter remanded for resentencing due to the cumulative effect of all the errors he has identified in this appeal.  Our supreme court has recognized "that individual errors may have the cumulative effect of denying a defendant a fair hearing [citation] and has reversed convictions and sentences when it was clear that the cumulative effect of the errors deprived the defendant of due process." *People v. Jackson*, 205 Ill. 2d 247, 283 (2001). Here, however, we have determined that only one of defendant's claims amounted to error—namely, his claim that the trial court considered the wrong sentencing range in imposing his sentence for UPWF. We have found defendant's other arguments either failed to establish error or failed to establish clear error. Accordingly, it is not "clear that the cumulative effect of [multiple] errors deprived the defendant of due process" (*id.*) at his sentencing hearing such that he is entitled to relief beyond resentencing on his UPWF conviction.

¶ 47                                            III. CONCLUSION

¶ 48            For the reasons stated, we vacate defendant's sentence for UPWF and remand the matter for resentencing on that conviction. We otherwise affirm the judgment of the trial court.

¶ 49            Affirmed in part and vacated in part; cause remanded.